## No. 17-1298

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Brianna Johnson,

Plaintiff-Appellant,

*v.*

Admiral Investments, LLC,

Defendant-Appellee.

On Appeal from the United States District
Court for the District of Minnesota

Hon. Michael J. Davis

Case No. 0:16-cv-452

## Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiff-Appellant and Reversal

Mary McLeod
 *General Counsel*
John R. Coleman
 *Deputy General Counsel*
Steven Y. Bressler
 *Assistant General Counsel*
Nandan M. Joshi
Bernard John Barrett, Jr.
 *Senior Litigation Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9396
Bernard.Barrett@cfpb.gov

# TABLE OF CONTENTS

Table of Authorities ............................................................................ ii

Interest of Amicus Curiae .................................................................... 1

Statement ............................................................................................. 2

    A.   Overview ................................................................................ 2

    B.   Statutory Background ........................................................... 2

    C.   Allegations of the Complaint ............................................... 3

    D.   Proceedings Before the District Court .................................. 4

Summary of Argument ......................................................................... 6

Argument .............................................................................................. 9

I.    Johnson's complaint states a claim for violations of the
FDCPA sufficient to survive a Rule 12(b)(6) motion to
dismiss because she alleges that Admiral
misrepresented the amounts she owed ........................................... 9

    A.   This Court has held that the FDCPA prohibits a debt
collector from seeking to collect unauthorized
amounts from consumers who are not represented
by counsel ........................................................................... 10

    B.   A debt collector who sends a letter to a consumer
represented by counsel violates the FDCPA when it
misrepresents the amount owed ........................................... 15

II.   Johnson alleged facts sufficient for Article III standing ............... 24

Conclusion ........................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alibrandi v. Fin. Outsourcing Servs., Inc.,*
  333 F.3d 82 (2d Cir. 2003)..................................................................... 3

*Bishop v. Ross Earle & Bonan, P.A.,*
  817 F.3d 1268 (11th Cir. 2016)................................................. 18, 19, 21

*Braitberg v. Charter Commc'ns, Inc.,*
  836 F.3d 925 (8th Cir. 2016)............................................................. 31

*Church v. Accretive Health, Inc.,*
  654 F. App'x 990 (11th Cir. 2016).....................................................28

*Dikeman v. National Educators, Inc.,*
  81 F.3d 949 (10th Cir.1996)......................................................... 19, 20

*Duffy v. Landberg,*
  215 F.3d 871 (8th Cir. 2000) ......................................................passim

*Evory v. RJM Acquisitions Funding, LLC,*
  505 F.3d 769 (7th Cir. 2007)............................................ 16, 17, 18, 21

*Haney v. Portfolio Recovery Associates, L.L.C.,*
  837 F.3d 918 (8th Cir. 2016) ......................................................passim

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982).....................................................................passim

*Hemmingsen v. Messerli & Kramer, P.A.,*
  674 F.3d 814 (8th Cir. 2012) ............................................................ 16

*Hulshizer v. Global Credit Servs., Inc.,*
  728 F.2d 1037 (8th Cir. 1984) .......................................................... 13

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.,*
  846 F.3d 625 (3d Cir. 2017) ............................................................. 27

Appellate Case: 17-1298    Page: 3    Date Filed: 04/10/2017 Entry ID: 4522334

*Janson v. Katharyn B. Davis, LLC,*
 806 F.3d 435 (8th Cir. 2015) ..................................................... 22, 23

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
 559 U.S. 573 (2010) ............................................................................. 3

*Jeter v. Credit Bureau, Inc.,*
 760 F.2d 1168 (11th Cir. 1985) ........................................................... 19

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) .................................................................... 25, 27

*McIvor v. Credit Control Servs., Inc.,*
 773 F.3d 909 (8th Cir.2014) .................................................... 2, 22, 23

*Peters v. Gen. Serv. Bureau, Inc.,*
 277 F.3d 1051 (8th Cir. 2002) ................................................. 11, 21, 22

*Picht v John R. Hawks, Ltd.,*
 236 F.3d 446 (8th Cir. 2001) .................................................. 12, 13, 15

*Powers v. Credit Mgmt. Servs., Inc.,*
 776 F.3d 567 (8th Cir. 2015) ................................................. 9, 16, 17, 18

*Shalala v. Ill. Council on Long Term Care, Inc.,*
 529 U.S. 1 (2000) ............................................................................. 27

*Spokeo, Inc. v. Robins,*
 136 S. Ct. 1540 (2016) ................................................................. passim

*Strubel v. Comenity Bank,*
 842 F.3d 181 (2d Cir. 2016) .................................................... 28, 29, 31

*Warth v. Seldin,*
 422 U.S. 490 (1975) ......................................................................... 25

*Wilhelm v. Credico, Inc.,*
 519 F.3d 416 (8th Cir. 2008) ............................................................. 13

iii

## Statutes

15 U.S.C. § 1601(a) ........................................................................... 29

15 U.S.C. § 1692(a)-(b) ........................................................................ 3

15 U.S.C. § 1692(e) .............................................................................. 3

15 U.S.C. § 1692e ........................................................................ passim

15 U.S.C. § 1692e(2) ............................................................................ 4

15 U.S.C. § 1692e(2)(A) ................................................ 6, 10, 17, 23, 30

15 U.S.C. § 1692e(5) ...................................................... 4, 10, 12, 13

15 U.S.C. § 1692e(10) ..................................................................... 4, 28

15 U.S.C. § 1692e(11) ........................................................................ 20

15 U.S.C. § 1692f ......................................................................... passim

15 U.S.C. § 1692f(1) ...................................................... 5, 6, 11, 12, 17

15 U.S.C. § 1692g(a) ........................................................................... 28

15 U.S.C. § 1692g(a)(1) ...................................................................... 30

15 U.S.C. § 1692k(c) ........................................................................... 13

15 U.S.C. § 1692l ................................................................................. 1

15 U.S.C. § 1692l(d) ............................................................................. 1

42 U.S.C. § 3604(d) ............................................................................ 27

Appellate Case: 17-1298     Page: 5     Date Filed: 04/10/2017 Entry ID: 4522334

## Rules

Fed. R. App. P. 29(a) ................................................................. 1

Fed. R. Civ. P. 12(b)(6) ...................................................... 2, 5, 9

## Other Authorities

Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010) ................................... 1

Pub. L. No. 95-109, § 802, 91 Stat. 874, 874 (1977) ............................ 3

S. Rep. No. 95-382.............................................................1, 2

S. Rep. No. 95-38221 .......................................................... 4

Appellate Case: 17-1298   Page: 6   Date Filed: 04/10/2017 Entry ID: 4522334

## INTEREST OF AMICUS CURIAE

The Consumer Financial Protection Bureau, an agency of the United States, files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure.

This appeal concerns the protections that the Fair Debt Collection Practices Act (FDCPA or the Act) affords consumers who are subjected to false, deceptive, or unfair debt collection practices. Congress established the Bureau "to protect consumers from abusive financial services practices," Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010), and vested it with authority to enforce the FDCPA and to "prescribe rules with respect to the collection of debts by debt collectors, as defined in [the FDCPA]." 15 U.S.C. § 1692*l*(d). The Bureau thus has a substantial interest in protecting consumers affected by the alleged conduct.

The Bureau also has a substantial interest in plaintiff's standing under Article III to bring suit in federal court to assert her rights under the Act. Although the Bureau and various other federal agencies have authority to enforce the Act, *see* 15 U.S.C. § 1692*l*, Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S.

Rep. No. 95-382, at 5 (1977).  An unduly narrow understanding of Article III standing would limit the ability of consumers to bring private actions authorized by the Act and thereby weaken an important supplement to the Bureau's own enforcement efforts.

## STATEMENT

### A. Overview

Brianna Johnson brought this action against Admiral Investments, LLC on February 23, 2016 in the United States District Court for the District of Minnesota.  By an Order dated February 2, 2017, United States District Judge Michael Davis dismissed this action with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Court reviews the grant of a motion to dismiss "de novo," accepting the factual allegations in the complaint as true and making all reasonable inferences in favor of the plaintiff.  *See McIvor v. Credit Control Servs., Inc.,* 773 F.3d 909, 912–13 (8th Cir.2014).  For purposes of this appeal, the facts alleged in Johnson's complaint are therefore accepted as true.

### B. Statutory Background

Congress enacted the FDCPA in 1977 because it concluded that existing laws and procedures were inadequate to protect consumers

2

from serious and widespread debt collection abuses. *See* Pub. L. No. 95-109, § 802, 91 Stat. 874, 874 (1977) (codified at 15 U.S.C. § 1692(a)-(b)). Congress intended the Act to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).

To effectuate its "broad, pro-debtor objectives," *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 87 (2d Cir. 2003), the Act prohibits a wide range of practices pertaining to the collection of consumer debts by debt collectors, *see generally* 15 U.S.C. §§ 1692b-1692i. Two such prohibitions are at issue. First, the Act prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Second, the Act prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

## C. Allegations of the Complaint

On or about August 31, 2010, Wells Fargo Bank, N.A. allegedly charged off a credit card debt of Appellant Brianna Johnson (Johnson)

3

with a balance of $4,953.47.  Joint Appendix (JA) 2, ¶¶ 6-9.  Wells Fargo had allegedly already stopped adding interest to the debt and sending Johnson statements reflecting the accumulation of interest. These acts by Wells Fargo and those of its successors allegedly waived any right to collect interest under the credit card agreement.  JA 2-3, ¶¶ 9-11, 13.

Appellee Admiral Investments, LLC (Admiral) eventually acquired Johnson's debt.  JA 3, ¶ 12.  Admiral sent a collection letter to Johnson in 2012 asserting a debt of $7,385.01 increasing with "interest, late charges, and other charges."  JA 3, ¶ 15.  Johnson then obtained counsel.  Admiral sent that lawyer a letter three years later, dated October 23, 2015, asserting only that the current balance had increased to $10,812.27.  JA 3, ¶ 16 and JA 79.  On January 10, 2016, Admiral served Johnson with a complaint in a Minnesota state court action alleging that she owed $4,953.47.  JA 4, ¶¶ 17-18.

## D.  Proceedings Before the District Court

On February 23, 2016, Johnson filed this FDCPA action alleging that Admiral "violated 15 U.S.C. §§ 1692e(2), 1692e(5), and 1692e(10) by falsely representing the character, amount, or legal status of the alleged debt, threatening to take action that cannot legally be taken,

Appellate Case: 17-1298    Page: 10    Date Filed: 04/10/2017 Entry ID: 4522334

and using a false representation or deceptive means to collect a debt."
JA 5, ¶ 24.  Johnson also alleged that Admiral "violated 15 U.S.C. §§
1692f and 1692f(1) by using unfair means to collect the alleged debt
and by attempting to collect an amount not authorized by the
agreement or permitted by law."  JA 5, ¶ 25.

The district court granted Admiral's motion to dismiss the
complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.
JA 70-78.  The court held that the 2015 letter did not violate the
FDCPA even if it falsely stated Johnson's debt.  JA 77.  The court noted
that the Eighth Circuit has adopted the "competent attorney" standard
(as opposed to the "unsophisticated consumer" standard) for
evaluating whether a communication sent to a consumer's attorney (as
opposed to an unrepresented consumer) violates the FDCPA.  JA 76-
77.  Applying that standard, the court concluded that a "competent
lawyer would look into whether this amount is correct and, if not
correct, would appropriately challenge the amount sought by the debt
collector."  JA 77.  Because "the alleged misrepresentation is based on
a legal interpretation, and is contained in a letter addressed to
Plaintiff's attorney," the district court concluded that "such letter
cannot form the basis of a claim under the FDCPA."  JA 78.

Appellate Case: 17-1298    Page: 11    Date Filed: 04/10/2017 Entry ID: 4522334

## SUMMARY OF ARGUMENT

I.  The FDCPA prohibits a debt collector from engaging in misrepresentations or unfair practices in attempting to collect a debt. The FDCPA makes its specifically unlawful for a debt collector to make a "false representation of . . . the . . . amount . . . of any debt," 15 U.S.C. § 1692e(2)(A), or to attempt to collect "any amount" not authorized by agreement or by law, *id.* § 1692f(1).  This Court has thus held that a debt collector violates the FDCPA when it sends a letter to an unrepresented consumer that misrepresents the amount of a debt that the consumer owes.

This Court has also held that misrepresentations made to a consumer through her counsel should be evaluated from the perspective of a "competent lawyer" rather than from that of an "unsophisticated consumer."  But even assuming *arguendo* that Johnson was represented by counsel at the time of Admiral's 2015 letter, a debt collector's misrepresentation of the amount of the debt is still actionable under §§ 1692e and 1692f of the FDCPA.  As other circuits have recognized, the specific prohibitions in those sections on falsely asserting the amount of the debt owed contain no exception for misrepresentations made to competent lawyers.  When Admiral

6

represented that Johnson owed $10,812.27, both a competent lawyer and an unsophisticated consumer would interpret that statement in only one way—as a representation that Johnson owed $10,812.27. If that representation was false, as Johnson alleges in her complaint, it violates §§ 1692e and 1692f of the FDCPA.

The district court incorrectly applied the competent-lawyer standard when it concluded that Johnson's putative counsel would have investigated Admiral's alleged representation to determine whether it was false. As other circuits have recognized, a debt collector cannot avoid its statutory responsibility to represent accurately the amount of a debt by shifting the burden to a consumer's counsel to uncover the falsehood. The district court also suggested that Admiral's alleged misrepresentation was not actionable because it was based on a legal interpretation. The 2015 letter, however, was not made in the context of litigation, nor did the district court examine whether Admiral had a good-faith basis in law for seeking the amount claimed.

II. Admiral argued unsuccessfully before the district court that Johnson lacked standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *Spokeo* reaffirmed that a plaintiff must establish "injury in fact" to have standing under Article III. It did not, however, overrule

7

prior Supreme Court precedent that had held that being the object of a mispresentation made unlawful under federal law is sufficient injury—without any further need for the plaintiff to allege consequential harm—to satisfy Article III. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374 (1982).

Circuit courts after *Spokeo* have evaluated the right to receive truthful information as either a substantive right, the violation of which necessarily gives rise to injury-in-fact, or a procedural right, the violation of which gives rise to injury-in-fact if it is not merely a "bare procedural violation, divorced from concrete harm." *Spokeo*, 136 S. Ct. at 1549. In this case, however, that distinction makes no difference. Even if viewed as a procedural right, a consumer's right to receive accurate information from a debt collector about the amount that it is seeking to collect is central to the debt collector/consumer relationship, which explains why Congress took care to prohibit the practice of debt collectors representing false amounts to consumers. A violation of that right is sufficient injury to confer Article III standing on a plaintiff.

8

## ARGUMENT

## I. Johnson's complaint states a claim for violations of the FDCPA sufficient to survive a Rule 12(b)(6) motion to dismiss because she alleges that Admiral misrepresented the amount she owed

This Court has already held that a debt collector violates the FDCPA when it misrepresents to an unrepresented consumer the amount that the consumer owes in interest and other fees. *See Haney v. Portfolio Recovery Associates, L.L.C.*, 837 F.3d 918, 932 (8th Cir. 2016); *Duffy v. Landberg*, 215 F.3d 871, 874-875 (8th Cir. 2000). This Court has also held that alleged misrepresentations in "communications sent to a consumer's attorney," *Haney*, 837 F.3d at 924, are evaluated under a "competent lawyer" standard, *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015). If the Court concludes that the district court's decision was procedurally proper (*see* Johnson's Br. 37-42) and that Johnson was represented by an attorney when she received the 2015 letter from Admiral (*see id.* at 28-31), then the question presented here is whether the FDCPA permits a debt collector to misrepresent the amount of a consumer's debt, presumably by adding interest or other fees, when communicating with the consumer's counsel. This Court should hold

9

that the "competent lawyer" standard cannot be stretched so far as to foreclose a claim premised on such behavior.

### A. This Court has held that the FDCPA prohibits a debt collector from seeking to collect unauthorized amounts from consumers who are not represented by counsel

1. As relevant here, the FDCPA imposes two broad prohibitions on the conduct of debt collectors. First, 15 U.S.C. § 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Second, 15 U.S.C. § 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Congress supplemented these broad proscriptions with lists of specific practices that violate § 1692e or § 1692f. In particular, Congress deemed it a violation of § 1692e for a debt collector to make a "false representation of . . . the character, *amount*, or legal status *of any debt*" or to make a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(2)(A), (5) (emphasis added). Similarly, Congress deemed it a violation of § 1692f for a debt collector to attempt to collect "any *amount* (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

Appellate Case: 17-1298    Page: 16    Date Filed: 04/10/2017 Entry ID: 4522334

expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1) (emphasis added).

With respect to claims brought under Section 1692e, this Court has held that "[i]n evaluating whether a debt collection letter is false, misleading, or deceptive in violation of § 1692e, the letter must be viewed through the eyes of an unsophisticated consumer." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). The unsophisticated-consumer standard "protects the uninformed or naïve consumer." *Duffy*, 215 F.3d at 874. At the same time, the standard "contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id.* at 874-75.

2. Applying the unsophisticated-consumer standard, this Court has held that a debt collector violates §§ 1692e and 1692f of the FDCPA if it seeks to collect interest or other amounts from an unrepresented consumer to which it is not entitled under state law.

In *Duffy*, this Court considered whether a debt collector violated §§ 1692e and 1692f by allegedly "mischaracteriz[ing] the extent of liability under Minnesota law" in its letters to unrepresented consumers. 215 F.3d at 873. This Court concluded that the debt

11

collector violated § 1692e by making a "misleading misrepresentation of Minnesota law" about the consumers' liability for a civil penalty. *Id.* at 874. The Court also found that the debt collector's statement about its entitlement to attorneys' fees violated § 1692e(5), which prohibits "threat[s] to take any action that cannot legally be taken," because "it is clear that attorney fees would not have been recoverable in an action against [plaintiffs] under Minnesota law." *Id.* Finally, the Court held that "although the interest calculations were admittedly only slightly overstated, the letters seeking these overstated interest charges were nonetheless an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Id.* at 875.

The following year, in *Picht v. John R. Hawks, Ltd*, the Court considered a debt collector's attempt to use state law prejudgment garnishment procedures to collect civil penalties for dishonored checks. 236 F.3d 446, 448 (8th Cir. 2001). Under Minnesota law, prejudgment garnishment was unavailable if a default judgment could not be entered, and a default judgment could not be entered for civil penalties because the amount of the penalty was subject to judicial discretion. *Id.* at 449-51. Because the debt collector attempted to use

prejudgment garnishment to collect civil penalties "in violation of Minnesota law," this Court held that the debt collector "violated the FDCPA's prohibition against threatening 'to take any action that cannot legally be taken.'" *Id.* at 451 (quoting 15 U.S.C. § 1692e(5)). The Court further held that the FDCPA's "bona fide error defense" did not excuse the violation. *Id.*; *see also* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). As the Court explained, a "'mistake about the law is not protected by' the bona fide error defense." *Picht*, 236 F.3d at 451 (quoting *Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984) (per curiam)); *see also Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008).

Last year, this Court applied *Duffy* to an FDCPA action based on a debt collector's letters seeking to collect interest under Missouri law. *See Haney*, 837 F.3d at 932. *Haney* involved two types of interest: "post-charge-off statutory prejudgment interest" and "prejudgment interest upon interest (compound interest)." *Id.* at 921. With respect

13

to post-charge-off statutory prejudgment interest, the Court examined Missouri law and concluded that "[n]othing inherent in the process of charging off a debt precludes a claim for statutory interest, and Missouri's prejudgment interest statute does not expressly preclude statutory prejudgment interest following a waiver of contractual interest." *Id.* at 928-29. The debt collector's "demands for such interest, therefore, were not actionable misrepresentations or unfair or unconscionable collection methods under 15 U.S.C. § 1692e or § 1692f, respectively." *Id.* at 929.

With respect to interest-on-interest, however, the Court concluded that the plaintiff "stated a claim that should have survived a motion for judgment on the pleadings" because, under Missouri law, "statutory prejudgment interest cannot be assessed on already accrued interest." *Id.* at 930, 931. Citing *Duffy*, the Court explained that "(1) there exists no *de minimis* exception to FDCPA liability based upon low dollar amounts; and (2) debt collectors' false representations about the availability of remedies or amounts owed under state law, like representations of fact, are to be viewed through the unsophisticated-consumer standard and may be actionable pursuant to the FDCPA." *Id.* at 932.

14

Notwithstanding this conclusion that a debt collector could not seek interest-on-interest in demand letters sent to consumers, the Court held that it did not violate the FDCPA for a debt collector to include a request for interest-on-interest in its "prayers for relief in litigation." *Id.* at 932. The Court explained that such a request was both "a statement directed to the court" and "a good faith legal position on a point of unsettled Missouri law." *Id.* at 932-33. The Court concluded that "the statute does not forbid a party from stating its good faith legal position to a court in a prayer for relief." *Id.* at 933.

Johnson contends that she was not represented by counsel when Admiral sent the 2015 letter and that the letter should therefore be evaluated under the unsophisticated-consumer standard. (Johnson Br. 28-31). If the Court agrees with that argument, then her allegation that Admiral misrepresented the amount she owed states a valid FDCPA claim under this Court's decisions in *Duffy*, *Picht*, and *Haney*.

### B. A debt collector who sends a letter to a consumer represented by counsel violates the FDCPA when it misrepresents the amount owed

If this Court concludes that Johnson was represented and that the "competent lawyer" standard applies, the Court should still reverse. Although there may be circumstances in which application of the

15

unsophisticated-consumer and the competent-lawyer standards produce different results, a debt collector's misrepresentation about the amount owed is not one of them.

1. In *Powers*, this Court concluded that "the unsophisticated consumer standard is 'inappropriate for judging communications with lawyers.'" 776 F.3d at 574 (quoting *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007)). *Powers* addressed whether a class action could be certified based on the allegation that a debt collector violated the FDCPA by sending abusive discovery requests to consumers' counsel in debt-collection litigation. The Court, "[c]onsistent with [its] decision in *Hemmingsen [v. Messerli & Kramer, P.A.*, 674 F.3d 814, 817 (8th Cir. 2012)]*, decline[d] to adopt an inflexible rule that the FDCPA can never apply to discovery requests made directly to the consumer's attorney during the course of debt collection litigation." 776 F.3d at 574. Nonetheless, the Court explained that "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.* (quoting *Evory,* 505 F.3d at 775). The Court ultimately concluded that a class could not be certified without "knowing the factual context in which those requests

16

were made in a particular case, or strong evidence of a standard practice that the debt collector has persistently abused." *Id.* at 575.

2. Although there may be representations that an unsophisticated consumer and a competent lawyer would interpret differently, a representation concerning the amount owed by the consumer is not one of them. In this case, Admiral's 2015 letter represented that Johnson owed—and Admiral was entitled to collect—$10,812.27. Both Johnson and her putative counsel would understand from that representation that Johnson owed $10,812.27 to Admiral. Assuming that representation is false as alleged (JA 3, ¶ 16, and JA 5, ¶¶ 24, 25), Johnson has stated a claim that Admiral has falsely represented the "amount . . . of any debt," 15 U.S.C. § 1692e(2)(A), and has engaged in the attempted "collection of any amount" not "expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1).

Other circuits have reached similar conclusions. In *Evory*, which this Court looked to in *Powers* when it adopted the competent-lawyer standard, *see* 776 F.3d at 574, the Seventh Circuit explained that, although a "sophisticated person is less likely to be either deceived or misled than an unsophisticated one," a "*false* claim of fact in a

17

dunning letter may be as difficult for a lawyer to see through as a consumer." 505 F.3d at 775 (emphasis added). The Seventh Circuit even gave the example of a letter that "misrepresents the unpaid balance of the consumer's debt." *Id.* As that court explained, "[t]he lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake." *Id.* Accordingly, "[s]uch a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer." *Id.* at 775. Indeed, *Evory* concluded that a plaintiff had stated an FDCPA claim by alleging that the debt collector told the plaintiff's attorney "that if the debt wasn't paid within two weeks . . ., a $15 daily charge would be added to the account balance until the debt was paid in full," a threat that "violate[d] Indiana law." *Id.* at 777.

Going further, the Eleventh Circuit has rejected the competent attorney standard for facially false statements, concluding that there is "no basis in the FDCPA to treat false statements made to lawyers differently from false statements made to consumers themselves." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1277 (11th Cir. 2016). *Bishop* involved not a false amount, but rather a "misstatement

18

of law" about whether a consumer must "dispute her debt 'in writing' to trigger her verification rights under [15 U.S.C.] § 1692g(b)." *Id.* at 1276. The court concluded that "false statements are an abusive debt collection practice," and the "'fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.'" *Id.* at 1277 (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985)). The Eleventh Circuit further explained that, because the "misrepresentation was not apparent on the face of the letter," it would "state a claim even in jurisdictions that apply the 'competent lawyer' standard," *id.* at 1276, and, in any event, would "require attorneys to expend client resources second-guessing the truthfulness of debt collection communications," *id.* at 1277. Given these considerations, the Eleventh Circuit declined to "adopt the 'competent lawyer' standard in any form" on the "facts of this case." *Id.* at 1277 & n.8.

In *Dikeman v. National Educators, Inc.,* 81 F.3d 949 (10th Cir.1996), the Tenth Circuit considered the application to attorney communications of the requirement that a debt collector disclose in its communications that it "is attempting to collect a debt and that any

19

information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). The court held that a specific affirmative disclosure was not required in that case because "the fact that a communication is made to collect a debt is something that the lawyer's professional expertise would allow him or her to discern easily on facts such as these." 81 F.3d at 953. The court contrasted that situation with one in which "the failure to make the required disclosure by verbal statement might be misleading to a lawyer," *id.*, and emphasized that "an *affirmative misrepresentation* to a lawyer" would not be "excusable merely because a lawyer could see through the false statement," *id.* at 954 n.14.

3. The district court correctly assumed, based on the allegations of the complaint, that Admiral's 2015 letter falsely represented that "the current balance of the debt [was] $10,812.27." JA 77. The district court, moreover, did not suggest that a competent attorney would interpret Admiral's statement of the amount owed differently than an unsophisticated consumer would. The court nonetheless dismissed Johnson's complaint because it concluded that a "competent attorney would look into whether this amount is correct, and if not correct, would appropriately challenge the amount sought by the debt

Appellate Case: 17-1298    Page: 26    Date Filed: 04/10/2017 Entry ID: 4522334

collector." *Id.* As explained above, however, the "competent lawyer" standard does not ask whether a competent attorney would, after the expenditure of effort, discover the misrepresentation. A lawyer "might be unable, depending on his client's resources, to undertake" such efforts. *Evory*, 505 F.3d at 775; *cf. Bishop*, 817 F.3d at 1276 ("[E]xcluding attorney communications from § 1692e would contravene the purpose of the FDCPA because the consumer, rather than the debt collector, would be forced to bear the costs resulting from the debt collector's conduct.") (internal quotation marks and brackets omitted). Indeed, *any* misrepresentation to an attorney might ultimately be discovered if enough resources were devoted to challenging a debt collector's assertions. The district court's reasoning eliminates virtually any liability for conduct with respect to a represented consumer—effectively overruling this Court's adoption of the competent-attorney standard.

To be sure, this Court has said that, in certain circumstances, a technically false statement, even in the context of an unsophisticated consumer, might not be actionable under the FDCPA. In *Peters*, this Court held that a "literally false" statement does not mislead a consumer where "it effectively conveys the consequences" of failing to

21

respond to a complaint. 277 F.3d at 1056. In *McIvor*, this Court likewise concluded that a "literally false statement does not violate § 1692e" where it has no "potential" to mislead. 773 F.3d at 913. And in *Janson v. Katharyn B. Davis, LLC*, this Court held that a false attestation of personal knowledge in an affidavit submitted in litigation was not actionable where the plaintiff did not allege that the affidavit itself was false or that the state court was misled by the false attestation. 806 F.3d 435, 437-38 (8th Cir. 2015).

These situations are not analogous to the current case: Based on the allegations in the complaint, the 2015 letter does not "effectively convey[]" the accurate amount of the debt owed, *Peters*, 277 F.3d at 1056, and the alleged misrepresentation as to the amount owed manifestly has the "potential" to mislead. *McIvor*, 773 F.3d at 913. Nor is this a situation, as in *Janson*, where the parties were in litigation and the allegedly false statement did not influence the outcome. *See* 806 F.3d at 438 ("Absent an allegation that *he actually did not owe rent*, Janson has not plausibly alleged that the defendant's practice [of attesting to affidavits without personal knowledge] misled the state court in any meaningful way.") (emphasis added). Instead, the dispute concerns a piece of information that is central to any debt

collection matter–the amount owed–and about which Congress specifically legislated in §§ 1692e(2)(A) and 1692f(1) when it said that debt collectors must be honest about the "amount" of debt that they seek to collect.

Finally, the district court vaguely stated that the 2015 letter was not actionable because it is "based on a legal interpretation." JA 78. To the extent that the district court believed that Admiral had a good-faith basis for the amount it asserted that Johnson owed (for example, if Admiral had a basis in state law for seeking interest on the debt in litigation), then the district court's conclusion is inconsistent with *Haney*. *Haney* holds that a debt collector cannot claim interest that is not permitted by state law in its debt collection letters to consumers, even if there is a good-faith basis for a debt collector to seek such interest in litigation. *Compare* 837 F.3d at 932 ("Haney has articulated viable § 1692e and § 1692f(1) claims by alleging false statements and collection attempts regarding the availability of compound interest") *with id.* at 933 ("the claim for that [statutory prejudgment interest] amount in the petition was a statement directed to the court, and it was a good-faith legal position on a point of unsettled Missouri law"). The 2015 letter was not a statement to a

court made in the context of litigation. And even if it were, the district court made no finding that Admiral had a good-faith basis in Minnesota law for seeking to collect the amount of debt indicated in the 2015 letter.

For the foregoing reasons, the judgment of the district court dismissing Johnson's complaint should be reversed.

## II. Johnson alleged facts sufficient for Article III standing

In its motion to dismiss, Admiral argued that Johnson lacked Article III standing to bring her FDCPA claim because she did not suffer a concrete and particularized injury. JA. 14-15. That is incorrect. The Supreme Court has long held that a plaintiff suffers a concrete and particularized injury when she does not receive truthful information to which she is entitled by law. The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), does not call that precedent into question.

**A.** In *Spokeo*, the Supreme Court reaffirmed the well-established principle that a plaintiff invoking the jurisdiction of an Article III court must establish "injury in fact." 136 S. Ct. at 1547. In particular, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

Appellate Case: 17-1298     Page: 30     Date Filed: 04/10/2017 Entry ID: 4522334

imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *Spokeo* also reaffirmed the longstanding principle that the required "legally protected interest" may be an interest that Congress has granted legal protection by creating a statutory right. *See id.* at 1549 (reaffirming that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'" (quoting *Lujan*, 504 U.S. at 578) (alteration omitted)); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (quotations omitted)). Nonetheless, the invasion of such a statutory right will not "automatically" satisfy the "injury-in-fact requirement"; the fact that Congress "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" is not necessarily enough. *Spokeo*, 136 S. Ct. at 1549. For example, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* Rather, the invasion of a statutory right must itself be "concrete and particularized" and "actual or imminent." *Id.* at 1548.

Appellate Case: 17-1298     Page: 31     Date Filed: 04/10/2017 Entry ID: 4522334

A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," *id.* at 1548 (quotations omitted), while a "concrete" injury is one that is "*de facto*," *id.* That is, to be "concrete," the injury must "actually exist"; it must be "real," not "abstract." *Id.* A concrete injury need not be tangible, however. *Id.* at 1549. In assessing whether an intangible injury is sufficiently "concrete," the Court recognized that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and, thus, that "its judgment is . . . instructive and important." *Id.*

**B.** Under this standard, a plaintiff's failure to receive truthful information that she is entitled to receive under federal law is a concrete and particularized injury. In *Havens Realty Corp. v. Coleman*, the Supreme Court held that the deprivation of a right not to be "the object of a misrepresentation made unlawful under" the Fair Housing Act (FHA) satisfied Article III's "injury in fact" requirement. 455 U.S. 363, 373-74 (1982). In that case, housing-discrimination "testers"—*i.e.*, individuals who, "without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices"—brought suit against a realty company that had falsely informed them that no

26

housing was available. *Id.* at 373-74. The FHA barred misrepresentations about available housing, thus creating a "legal right to truthful information about available housing." *Id.* at 373 (citing 42 U.S.C. § 3604(d)). The Court concluded that "the Art. III requirement of injury in fact is satisfied" when a tester "alleged injury to her statutorily created right to truthful housing information." *Id.* at 374.

*Havens Realty* remains good law. *Spokeo* did not mention—much less limit—*Havens Realty*'s holding that a violation of a statutory right not to be the target of a misrepresentation satisfies "the Art. III requirement of injury in fact." 455 U.S. at 374; *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). On the contrary, *Spokeo* confirmed that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1997)) (alteration omitted); *see also In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017) ("*Spokeo*

27

itself does not state that it is redefining the injury-in-fact requirement.").

Following *Spokeo*, the Eleventh Circuit recognized the continuing validity of *Havens Reality* in concluding that a plaintiff had Article III standing to raise a claim based on a debt collector's failure to provide disclosures required under the FDCPA. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (citing 15 U.S.C. §§ 1692e(10), 1692g(a)). As the Eleventh Circuit explained, "[j]ust as the tester-plaintiff [in *Havens Realty*] had alleged injury to her statutorily-created right to truthful housing information, so too has [the plaintiff] alleged injury to her statutorily-created right to information pursuant to the FDCPA." *Id.* Moreover, the Eleventh Circuit understood that the failure to provide such information was not a "bare procedural violation" insufficient to confer standing under *Spokeo*, but, rather, "a substantive right to receive certain disclosures," the violation of which is sufficient to constitute an injury-in-fact. *Id.* at 994 n.2.

In *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), the Second Circuit reached a similar result through a slightly different analysis. Recognizing that *Havens Reality* remained good law, *see id.*

Appellate Case: 17-1298    Page: 34    Date Filed: 04/10/2017 Entry ID: 4522334

at 190 n.8, that court held that a creditor's alleged failure to provide credit-card-opening disclosures under the Truth in Lending Act could give rise to an Article III injury where "Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 190 (quoting *Spokeo*, 136 S. Ct. at 1549). There, the court found standing to challenge the failure to give disclosures that were designed to "protect a consumer's concrete interest in 'avoiding the uninformed use of credit,' a core object of the TILA." *Id.* (quoting 15 U.S.C. § 1601(a)). By contrast, the Second Circuit declined to find standing with respect to two other omitted disclosures that did not implicate that statutory purpose, *id.* at 191-94, and did not plausibly produce "adverse effects on consumer behavior," *id.* at 193.

C. Under this precedent, Johnson has alleged an Article III injury regardless of whether Admiral's alleged failure to provide her with accurate information about the amount of her debt is considered a substantive or a procedural right. The FDCPA prohibits debt collectors both from "us[ing] any false, deceptive, or misleading representation or means" to collect a debt, 15 U.S.C. § 1692e, and from using "unfair or unconscionable means to collect or attempt to collect

29

any debt," *id.* § 1692f. And Congress specifically addressed debt collectors who provide false information about the "amount" of the debt that a consumer owes. 15 U.S.C. §§ 1692e(2)(A), 1692f(1); *see also id.* § 1692g(a)(1) (requiring debt collectors to disclose the "amount of the debt" on or after their initial communication with consumers). The Act authorizes a consumer to recover actual and statutory damages from "any debt collector who fails to comply with" either provision "with respect to" the consumer. *Id.* § 1692k(a). Together, these provisions grant consumers like Johnson a legally protected interest in not being subjected to false debt-collection communications—an interest that Admiral is alleged to have invaded.

If the statutory right to receive accurate information about the amount of the debt is viewed as a substantive right, Johnson's injury is "concrete" even if she has not alleged that the false representation or unfair conduct caused additional consequential harm. No such harm was alleged in *Havens Realty*. Rather, the Supreme Court upheld a tester's Article III standing even though she "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home." *Havens Realty*, 455 U.S. at 374. As in *Havens Realty*, Admiral's

30

deprivation of Johnson's statutory rights not to be subject to false representations or unfair conduct in the context of debt collection—specifically with respect to the amount of the debt—are each sufficiently concrete alone to confer Article III standing on Johnson.

But even if the rights are viewed as procedural rights, Johnson has standing because she does not allege merely "a bare procedural violation, divorced from any concrete harm." *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549). The amount of the debt owed is central to the debt-collector/consumer relationship, which is why Congress took care to ensure that consumers are given the correct information about the amount they owe and why this Court has recognized that "there exists no *de minimis* exception to FDCPA liability based upon low dollar amounts," *Haney*, 837 F.3d at 932. When a debt collector misrepresents the amount owed, it implicates the "core object" (*Strubel*, 842 F.3d at 190) of the FDCPA, to ensure that "every individual" is "treated in a reasonable and civil manner." 123 Cong. Rec. 10241 (Apr. 4, 1977) (statement of Rep. Annunzio). As the Court in *Spokeo* acknowledged, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and

Appellate Case: 17-1298     Page: 37     Date Filed: 04/10/2017 Entry ID: 4522334

its judgment about what harms meet those requirements is accordingly "instructive and important."  136 S. Ct. at 1549.  As in *Havens Realty*, "[t]his congressional intention cannot be overlooked in determining whether [Johnson has] standing to sue."  455 U.S. at 373.

## CONCLUSION

For these reasons, the Court should reverse the judgment of the district court.

Respectfully submitted,

April 7, 2017

/s/ Bernard John Barrett, Jr.

Mary McLeod
    *General Counsel*
John R. Coleman
    *Deputy General Counsel*
Steven Y. Bressler
    *Assistant General Counsel*
Nandan M. Joshi
Bernard John Barrett, Jr.
    *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9396
Bernard.Barrett@cfpb.gov

32

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, Type-Style Requirements, and Virus Scan Requirement

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f), this brief contains 6,424 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and 14-point Georgia font.

Pursuant to Circuit Rule 28A(h)(2), I also hereby certify that the electronic file for this Brief has been scanned for viruses and is virus-free.

/s/ Bernard John Barrett, Jr.

Bernard John Barrett, Jr.
Counsel for *Amicus Curiae*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9396 (telephone)
Bernard.Barrett@cfpb.gov

April 7, 2017

**Certificate of Service**

I hereby certify that on April 7, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I understand that the participants in the appeal are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Bernard John Barrett, Jr.

Bernard John Barrett, Jr.
Counsel for *Amicus Curiae*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9396
Bernard.Barrett@cfpb.gov

April 7, 2017